# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BIRDT,<br><br>                              Plaintiff,<br><br>          v.<br><br>SAN BERNARDINO SHERIFFS<br>DEPARTMENT, et al.<br><br>                              Defendants. | Case No. EDCV 13-00673-VAP (JEM)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Virginia A. Phillips, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

On February 26, 2013, the San Bernardino County Sheriff's Department denied the application of Plaintiff Jonathan Birdt for a concealed weapon license without providing any statutory reason for the denial.  Eventually, the Sheriff's Department disclosed that it denied Plaintiff a license because he failed to meet the "good moral character" requirement of California Penal Code § 26150 for obtaining a license.  In this pro se civil rights action under 42 U.S.C. § 1983, Plaintiff contends that denial of his application for a concealed weapon permit violates his Second Amendment right to carry a gun outside the home for self-

defense, and seeks an order mandating Sheriff McMahon to issue the requested license. Thus, this case presents the following issues for resolution: (1) whether "good moral character" is a valid constitutional limitation on Plaintiff's right to carry a gun outside the home for self-defense, (2) whether the denial of Plaintiff's application for lack of "good moral character" on the specific facts of this case was proper, and (3) whether the Sheriff's Department has the discretion to deny Plaintiff's application for a license even if the requirements of § 26150 have been met.

Before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant John McMahon, Sheriff of San Bernardino County. Also before the Court is a Motion for Summary Judgment filed by Plaintiff. In his Opposition, Defendant McMahon requests that summary judgment be entered for him but has not filed any cross-motion for summary judgment. The Court, however, has the authority to enter summary judgment sua sponte for the non-moving party if the record is sufficiently developed, there is no genuine issue of material fact and the original movant has had an adequate opportunity to demonstrate a genuine issue of material fact. Albino v. Baca, 747 F.3d 1162, 1176-77 (9th Cir. 2014) (en banc); see also Rule 56(f)(1).

The Court recommends that Sheriff McMahon's Motion to Dismiss be DENIED. The Court also recommends that Sheriff McMahon's request for summary judgment be DENIED without prejudice to its renewal after he has an opportunity to exercise his discretion whether to deny a license to Plaintiff on grounds other than lack of good moral character. Finally, the Court recommends that Plaintiff's Motion for Summary Judgment and request for an order requiring Sheriff McMahon to issue a license be DENIED without prejudice to reconsideration after Sheriff McMahon exercises his discretion to grant or deny same.

## **RELEVANT PROCEDURAL HISTORY**

On April 12, 2013, Plaintiff Jonathan Birdt filed his original pro se civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that then Defendant San Bernardino County Sheriff's Department's denial of his application for a concealed weapon permit without providing any statutory reason violated his Second Amendment right to carry a gun outside his home.

On April 26, 2013, then Defendant San Bernardino County Sheriff's Department filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. Rule 12(b)(6). In a September 30, 2013 Report and Recommendation ("R&R"), this Court recommended denial of Defendant's Motion to Dismiss, rejecting Defendant's argument that there is no constitutional right to carry a concealed weapon where open carry is prohibited. Nonetheless, the Court dismissed Plaintiff's original complaint sua sponte because it failed to allege Plaintiff had satisfied all statutory and procedural requirements for obtaining a concealed weapon license. On October 13, 2013, the District Judge adopted this Court's R&R.

Plaintiff filed a First Amended Complaint ("FAC") on November 5, 2013 that added the allegation that he had satisfied all requirements for the issuance of a permit. On November 8, 2013, then Defendant San Bernardino County Sheriff's Department filed a Motion to Dismiss contending that the FAC failed to state a claim under Fed. R. Civ. P. Rule 12(b)(6). In a May 12, 2014 R&R, this Court recommended denial of the Motion to Dismiss because on February 13, 2014, after the Motion to Dismiss was filed, the Ninth Circuit in Peruta v. County of San Diego, 742 F.3d 1144, 1166 (9th Cir. 2014) explicitly ruled that any responsible, law-abiding citizen has a right under the Second Amendment to carry a gun in public for self-defense. On June 9, 2014, the District Court adopted this Court's May 12, 2014 R&R.

On June 11, 2014, this Court issued an Order to Show Cause why the FAC should not be dismissed because San Bernardino County and the San Bernardino Sheriff's Department are not subject to liability under Section 1983. The Sheriff's Department acts on a statewide, not countywide, basis in administering concealed weapon permits under California's statutory scheme. Scocca v. Smith, 912 F. Supp. 2d 875, 883-84, 888 (N.D. 2012). As such, the Eleventh Amendment bars suits against the Sheriff's Department for all types of relief and Sheriff McMahon in his official capacity for monetary damages. Id. at 884. The Eleventh Amendment, however, does not preclude a suit against Sheriff McMahon in his personal capacity, Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999),

<u>cert</u>. <u>den</u>. 528 U.S. 816 (1999), or even in his official capacity, if the claim is one for declaratory or injunctive relief that is prospective in nature. <u>Scocca</u>, 912 F. Supp. 2d at 884. Rather than contest the OSC, Plaintiff filed a Second Amended Complaint ("SAC") on June 26, 2014, naming John McMahon as the only defendant in the case.[1] The SAC does not indicate whether McMahon is being sued in his official or personal capacity but personal capacity would be assumed, <u>Romano</u>, 169 F.3d at 1186, and, this being a suit for injunctive relief only, suit against McMahon in his official capacity also would be permissible. <u>Scocca</u>, 912 F. Supp. 2d at 884.

On June 30, 2013, Plaintiff filed a Motion for Summary Judgment on his Second Amended Complaint. On July 22, 2014, McMahon filed his Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff filed a Reply on that same date.

On July 22, 2014, McMahon filed a Motion to Dismiss the SAC. On the same day, Plaintiff filed an Opposition. McMahon did not file a Reply.

Plaintiff's Motion for Summary Judgment, Sheriff McMahon's request for summary judgment and McMahon's Motion to Dismiss are ready for decision.

## THE SECOND AMENDED COMPLAINT

The relevant allegations of the Second Amended Complaint are:

1. The California Legislature has mandated that the only method by which a resident of the State can bear arms for the purpose of self-defense outside the home is with a permit to carry a concealed weapon.

2. Plaintiff is a resident of San Bernardino County and sought a concealed weapon permit and his application was denied on February 26, 2013 without any statutory reason for the denial.

* * *

---

[1] The SAC does not identify John McMahon as the Sheriff of San Bernardino County but does allege McMahon refuses to issue him a permit. McMahon's Opposition to Plaintiff's Motion for Summary Judgment identifies McMahon as the Sheriff of San Bernardino County, and § 26150 establishes his authority to issue a concealed weapon license.

5.  The Supreme Court has held that "The Second Amendment protects the right to keep and bear arms for the purpose of self-defense." McDonald v. City of Chicago, Ill. (2010) 130 S. Ct. 3020, 3021.

6.  Plaintiff cannot exercise this right without a permit from Defendant.

7.  Defendant refuses to issue a permit to Plaintiff.

8.  Plaintiff meets all State mandated requirements and has complied with all Department procedures as instructed by the CCW coordinator for the SBSO.

9.  Despite having fully complied with all statutory requirements and procedural requirements established by SBSO, Defendant continues to refuse to issue Plaintiff a permit in violation of his Second Amendment right to possess a weapon for self-defense outside the home.

(SAC at 1-2.)  Plaintiff seeks injunctive relief only, i.e., the issuance of a concealed weapon license.

**FACTUAL BACKGROUND**

Defendant McMahon filed a Request for Judicial Notice ("RJN") of the Plaintiff's entire application file for a concealed weapon license (redacted of Plaintiff's personal information) in support of his Motion to Dismiss and in opposition to Plaintiff's Motion for Summary Judgment.  (Dkt. # 109, Ex. A.)  The file contains a background investigation report from February, 2013 that indicates Plaintiff's application was denied because he "Lacks Good Moral Character."  (Id. at 1-2.)  The basis for this finding is the public discipline summary of the State Bar of California, also included in Plaintiff's file.  (Id. at 59-60.)  Plaintiff Jonathan Birdt, an attorney admitted to the California Bar in 1996 (id. at 59), "stipulated that he indirectly communicated with a party represented by counsel without the other lawyer's consent" and then "falsely told the Court under penalty of perjury" that his client negotiated settlements without his involvement.  (Id. at 60.)  Birdt "stipulated that his actions involve moral turpitude."  (Id.)

The summary also indicates that on November 5, 2009, Plaintiff was "suspended for one year, stayed, placed on two years of probation with a 30-day actual suspension and was ordered to take the MPRE within one year." (Id.)  In mitigation, Plaintiff cooperated with the Bar's investigation.  (Id.)

In the Opposition to Plaintiff's Motion for Summary Judgment, attached to the Declaration of Deputy County Counsel Algeria Ford is the State Bar's Stipulation Re Facts, Conclusions Of Law And Disposition And Order Approving Suspension, dated April 27, 2009, which is a complete version of the facts contained in the State Bar summary.  (Dkt. 94-2.)  The Stipulation clarifies certain facts.  First, the incident leading to Birdt's suspension occurred in 2005.  Second, Birdt filed a declaration under penalty of perjury with the Superior Court that he was not involved with the settlements.  (Id. at 8-9.)   The Stipulation provides, "Respondent knew those statements were false" and "committed acts involving moral turpitude, dishonesty and/or corruption."  (Id.)  Birdt stipulated to these factual findings and legal conclusions.  (Id.)  McMahon relies on both the summary and the Stipulation in his Separate Statement of Facts.  Plaintiff does not contest McMahon's Separate Statement or the characterization of the discipline he received from the State Bar.        Plaintiff's application file also reveals that an incident occurred on January 29, 2013 when he came into the Sheriff's office and tried to file a form from the California Department of Justice website which he demanded to leave at the counter without all the required documentation.  (Id. at 1.) He was told that when he had all the correct documentation he should call the number in the Sheriff's packet for an interview date.  (Id.)  The Sheriff's office does not accept applications without an appointment.  (Id.)  He left the office "irate."  (Id.)  Birdt subsequently sent a January 29, 2013 letter with his application and a check (id. at 58) but the Sheriff's office does not accept applications by mail nor does it accept checks.  (Id. at 1.)  The background investigation report concludes, "Birdt not only have an aggressive defiant behavior . . . he failed to follow directions."  (Id.)

On February 26, 2013, Sheriff McMahon through Captain Todd Paterson sent a letter to Birdt denying him a concealed weapon permit.  (Id. at 3.)  The letter does not give a

reason for the denial and states that the denial is final. There is no explanation that the application was incomplete or that an appeal was available, even though the background investigation report (id. at 2) and a submission to this Court (Dkt. # 65) indicate that appeals are considered. No interview ever occurred.

In his Declaration in support of his Motion for Summary Judgment, Birdt states that he repeatedly has offered to meet with Defendant. He also states that he is an attorney in good standing admitted to practice before this Court, all District Courts in California and Nevada and most recently before the United States Supreme Court. He further states that he is admitted to practice law and a lawyer in good standing with the Bars of California, Nevada and Texas. He avers that he is regularly appointed by the Los Angeles County Superior Court as a guardian ad litem upon the recommendation of Public Counsel. He has no criminal record and is not prohibited from owning and possessing a firearm. He is licensed to carry a concealed weapon by Nevada and Utah, permits recognized in more than 38 states. He is a certified NRA Range Safety Officer and nationally ranked competitive shooter frequently competing and training with active duty law enforcement and military personnel.

In his Separate Statement, Plaintiff states that he has "no criminal record, is not barred from owning or possessing firearms, and has been found to currently be of good moral character by: a. This District Court b. All District Courts in California and Nevada c. The Supreme Courts of the United States, California, Nevada and Texas."

Defendant McMahon does not dispute the truth of the facts stated in Plaintiff's Declaration or Separate Statement.

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Motions To Dismiss

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate when the complaint lacks a cognizable legal theory or sufficient facts to support

a cognizable legal theory. Mendiondo v. Centinela Hosp. Medical Center, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Conclusory allegations are insufficient. Id. at 678-79. Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

All allegations of material fact are accepted as true, "as well as all reasonable inferences to be drawn from them." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); see also Twombly, 550 U.S. at 555. For an allegation to be entitled to the assumption of truth, however, it must be well-pleaded; that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. See Iqbal, 556 U.S. at 678-79. The Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. See id.; see also Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (court not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). The Court also need not accept as true allegations that contradict matters properly subject to judicial notice. Sprewell, 266 F.3d at 988. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must limit its review to the operative complaint and may not consider facts presented in briefs or extrinsic evidence. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:211 (2004) ("[T]he court cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials)."). Materials submitted as part of the complaint are not "outside" the complaint and may be considered. Lee, 25 F.3d at 688; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In addition, "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (internal quotations and citations omitted); see also Lee, 250 F.3d at 688 (documents not physically attached to the complaint may be considered if their authenticity is not contested and "'the plaintiff's complaint necessarily relies' on them") (citation omitted). The Court also may consider facts properly the subject of judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). Thus, courts may "consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

In a pro se civil rights case, "the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted). Before dismissing a pro se civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. Id. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id.; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

///

## B. Summary Judgment

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Material facts are those that affect the outcome of the case. Id. at 248; see also Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court does not weigh the evidence, but only determines if there is a genuine issue for trial. Menotti v. City of Seattle, 409 F.3d 1113, 1120 (9th Cir. 2005).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party presents sufficient evidence or argument to support the motion, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Id. at 324; see also Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). The nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting former Rule 56(e)); see also Rule 56(c); Anderson, 477 U.S. at 257. The nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. With respect to an issue for which the opposing party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.")).

/ / /

### C. Section 1983 Claims

As to claims brought under 42 U.S.C. § 1983, a plaintiff must allege: (1) the defendants were acting under color of state law at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States. See Karim-Panahi, 839 F.2d at 624. There must be an affirmative link between the defendants' actions and the claimed deprivations. See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 692 (1978) (". . . Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (no affirmative link between incidents of police misconduct and adoption of plan or policy demonstration authorization or approval of misconduct). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted). The first step is to identify the specific constitutional or federal right allegedly infringed. Id.

## II. ANALYSIS

### A. The Second Amendment Right To Bear Arms In Public

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that the District of Columbia's "absolute prohibition of handguns held and used for self-defense in the home" clearly violated the Second Amendment.[2] Id. at 628-636 (emphasis added). In so holding, the Supreme Court explained that the Second Amendment right is an individual right to "keep and carry arms," and further noted that "the inherent right of self-defense has been central to the Second Amendment right." Id. at 627-629. The Supreme Court stated that the core protection of the Second Amendment was "the right of law-

---

[2] The Supreme Court explained that the challenged law in Heller "totally bans handgun possession in the home. It also requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." Heller, 554 U.S. at 628.

abiding, responsible citizens to use arms in defense of hearth and home."  Id. at 635.  In

McDonald v. City of Chicago, 130 S.Ct. 3020, 3026 (2010), the Court held that "the Second

Amendment right is fully applicable to the States."

The Supreme Court further stated in Heller that, "[l]ike most rights, the right secured

by the Second Amendment is not unlimited."  554 U.S. at 626.  Thus, the Supreme Court

also made it clear that "the right was not a right to keep and carry any weapon whatsoever

in any manner whatsoever and for whatever purpose."  Id.  For example, the Supreme Court

noted that:

> the majority of the 19th-century courts to consider the question held
>
> that prohibitions on carrying concealed weapons were lawful under the
>
> Second Amendment or state analogues. Although we do not undertake
>
> an exhaustive historical analysis today of the full scope of the Second
>
> Amendment, nothing in our opinion should be taken to cast doubt on
>
> longstanding prohibitions on the possession of firearms by felons and
>
> the mentally ill, or laws forbidding the carrying of firearms in sensitive
>
> places such as schools and government buildings, or laws imposing
>
> conditions and qualifications on the commercial sale of arms.

Id. at 626-627 (internal citations omitted).  In a footnote, the Supreme Court explained: "We

identify these presumptively lawful regulatory measures only as example; our list does not

purport to be exhaustive."  Id. at 627 n. 26.

The Supreme Court has not yet addressed whether the Second Amendment

guarantees the right to carry concealed weapons outside the home for self-defense.  On

February 13, 2014, however, the Ninth Circuit in Peruta explicitly ruled that any responsible

law abiding citizen has a right under the Second Amendment to carry a gun outside the

home for self-defense.  742 F.3d at 1166.  California law generally bars open carry, Cal.

Penal Code § 26350, but authorizes a county sheriff or municipal police official to issue a

concealed weapon permit if an applicant demonstrates "good moral character," completes a

specified training course, and establishes "good cause."  Id. at 1147-1148, citing Cal. Penal

Code §§ 26150 and 26155. The County of San Diego's policy implementing § 26150 provides that concern for one's personal safety alone is not considered "good cause." Id. at 1169. The Ninth Circuit held that the County's policy, coupled with the state prohibition on open carry, effectively destroyed the right to bear arms and cannot be sustained under any level of scrutiny. Id. at 1175. Peruta concluded by emphasizing that regulation of the right to bear arms is "not only legitimate but quite appropriate," 742 F.3d at 1178, and by repeating Heller's admonition that nothing in the opinion should be taken to cast doubt on traditional prohibitions on the possession of firearms such as by felons and the mentally ill. Id.

Justice Thomas in dissent argued that carrying of concealed weapons outside the home does not inherently involve the Second Amendment core protection of defense of home and hearth. Id. at 1181, 1191. The dissent disagreed with the majority's historical analysis and as the majority itself recognized (id. at 1173) Peruta is at odds with appellate decisions from other Circuits that have upheld "justifiable need" restrictions or concluded that "the Second Amendment does not confer a right to carry concealed weapons." Peterson v. Martinez, 707 F.3d 1197, 1210-11 (10th Cir. 2013). The dissent further notes that, even if the County's good cause requirement burdened any Second Amendment right to carry a gun outside the home, the requirement would satisfy intermediate scrutiny which requires a "significant, substantial or important" governmental objective and a reasonable fit between the challenged regulation and the asserted objective. Id. at 1191-1194. The dissent found that public safety and preventing crime are important government objectives, id. at 1192, and granting concealed weapon permits only to those who need them is a reasonable fit between the policy and the objectives. Id. at 1193-94. In conclusion, the dissent found that San Diego County's policy falls squarely within the Supreme Court's definition of "presumptively lawful regulatory measures." Id. at 1198-99.

Peruta is not over. Although the majority made clear it was ruling on San Diego County's policy and not the constitutionality of any state law, id. at 1172-73, esp. n.19, the dissent argued that the majority in effect is challenging the constitutionality of California's

good cause requirement set forth in California Penal Code § 26150 and that the State of California should be joined as a defendant. Id. at 1195-96. The State of California, as it happens, is intervening before the Ninth Circuit as part of the en banc review process that could result in modification or reversal of Peruta. Additionally, as the majority notes, other Circuits have issued contrary decisions, setting up the potential for Supreme Court review. Id. at 1173. The District Court in this case found it prudent to maintain the status quo and deny Plaintiff's application for a preliminary injunction. Nonetheless, for the time being, Peruta is governing Ninth Circuit law that lower courts must follow. See Nichols v. Harris, — F. Supp. 2d — , 2014 WL 1716135*1 (C.D. Cal.) (panel decision is binding on lower courts as soon as it is published and remains binding even if the mandate is stayed, citing Gonzalez v. Arizona, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)). Indeed, on August 22, 2014 Judge Ishii of the Eastern District relied on and cited Peruta in declaring a 10 day waiting period for taking possession of a firearm after its purchase unconstitutional under the Second Amendment as applied to those who possess a valid concealed weapon license. Silvester v. Harris, ___ F. Supp. 2d ____, Case No. 1:11-CV-2137 AWI SAB (E.D. Cal. 2014).[3] This case, moreover, is not a "good cause" case as was Peruta.[4]

/ / /

---

[3] The Court also notes the July 24, 2014 decision of Senior District Judge Frederick Scullin, Jr. of the District Court of the District of Columbia in Palmer v. District of Columbia, 2014 WL 2919329 (D.D.C.). That decision invalidated a District of Columbia total ban on carrying of handguns in public based on the Second Amendment. It relies heavily on the reasoning in Peruta which is cited extensively.

[4] Plaintiff provides the following "good cause" statement in his application for a concealed weapon license:

> Attorney, volunteer judge and court appointed guardian for abused minors. Frequent travel on back roads and through severe weather with large amounts of cash. Concerning re increasing crime, reduction in police services and increased prison release. Need to protect family from crime.

(Dkt. # 109, Ex. A at 49.)

San Bernardino County does not have a policy like that of San Diego County challenged in Peruta. In a submission to the Court, McMahon indicated that in 2013 there were 733 new interviews, 720 new permits issued, 1249 renewals and 111 denials, revocations and cancellations. (Dkt. # 65, Ex. A.)

14

## B. Good Moral Character

This case presents the issue of whether "good moral character" is a legitimate restriction of an individual's right to carry a weapon outside the home for self-defense. Heller and Peruta made clear that the Second Amendment right to bear arms is not unlimited, specifically mentioning prohibition on the possession of firearms by felons and the mentally ill. Heller and Peruta, however, do not address lack of "good moral character" as a basis for restricting the carrying of weapons for self-defense outside the home under the Second Amendment.

The Court searched for a definition of "good moral character" as that term is used in California Penal Code § 26150. That statute authorizes the sheriff of a county to issue a concealed weapon license if: (1) the applicant is of good moral character, (2) good cause exists for the issuance of the license, and (3) the applicant has completed a training course. § 26150, however, provides no definition of "good moral character." Nor could the Court find any regulations defining "good moral character" as used in § 26150 in the California Administrative Code. The Court could find no state or federal cases defining or construing the "good moral character" requirement of § 26150. The parties in this case offered no definition of "good moral character."

The Court of necessity has had to search more broadly to find other contexts in which there exists a good moral character requirement, such as for immigration, professional licenses and impeachment of testimony. According to Wikipedia, good moral character and its polar opposite "moral turpitude" have been used in immigration, citizenship and deportation decisions since the 19th century. Good moral character is evaluated by "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10. Statutes and regulations find a lack of good moral character for naturalization based on certain criminal convictions during the five year statutory period for naturalization. Id. A lack of good moral character will be found if the applicant has committed one or more crimes involving "moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(1) (admissibility of aliens); 8 U.S.C. § 1227(A)(2) (deportation). The United States Department of State Foreign Affairs

Manual, 9 FAM 40.21(a)N2 catalogues crimes involving moral turpitude which include fraud and perjury and false testimony under oath. A naturalization applicant's conduct more than five years ago can be considered if relevant to a determination of the applicant's present moral character. 8 C.F.R. § 316.10.

More relevant to this case is the good moral character requirement for professional licenses, in particular for attorney admission and disbarment. Rule 4.40 of the Rules of the State Bar, requiring applicants for admission to the Bar to be of good moral character, defines the term to "include but is not limited to qualities of honesty, fairness, candor, trustworthiness, respect for the rights of others and the judicial process." This definition is repeated in the State Bar's Statement On Moral Character Requirement For Admission To Practice Law in California.

California Business and Professions Code Section 6106 provides that an attorney can be suspended or disbarred for "any act involving moral turpitude." In the leading case on the subject, Chadwick v. State Bar of California, 49 Cal.3d 103 (1989), a lawyer was disciplined for insider trading, agreeing to lie to the SEC and lying to the SEC. Id. at 108. The issue presented was whether these acts constitute moral turpitude. The California Supreme Court observed that "the concept of moral turpitude escapes precise definition" but acknowledged the general definition of moral turpitude as an "act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." Id. at 110. Operationally, moral turpitude is "any crime or misconduct without excuse . . . or any dishonest or immoral act." Id. "Crimes which necessarily involve an intent to defraud, or dishonesty for personal gain, such as perjury . . . may establish moral turpitude." Id. The Court concluded that the State Bar Court correctly determined that Chadwick's actions constituted "moral turpitude." Id. at 110-111.

The State Bar suspended Chadwick from the practice of law for a period of five years but execution of the suspension was stayed and he was placed on probation for five years subject to certain conditions, including two years' actual suspension. Id. at 106. The

California Supreme Court adopted the State Bar recommendation but reduced the actual suspension to one year for mitigating reasons. Id. at 112. These reasons included Chadwick's cooperation, no prior records of discipline, the passage of considerable time since the misconduct without any commission of additional misconduct and his remorsefulness. Id. at 112.

The Court also notes the State Bar's Statement Of Factors That May Be Taken Into Consideration When Evaluating The Rehabilitation Of An Application Seeking A Moral Character Determination. This statement sets forth 13 non-exclusive factors to be considered in determining whether an applicant has demonstrated rehabilitation.

The above authorities make clear that a lack of "good moral character" encompasses the same sorts of criminal activity which always have been traditional bases for denial of the use and possession of firearms under Heller and Peruta. Crimes of "moral turpitude," which include perjury, fraud and dishonesty, fit squarely within the scope of what community standards would regard as a lack of "good moral character."[5] Thus, there is nothing facially suspect about a "good moral character" requirement because it cannot be said that there is "no set of circumstances" under which the requirement would be valid as a restriction on the Second Amendment. See United States v. Salerno, 481 U.S. 739, 745 (1987). Plaintiff, moreover, does not contend that the good moral character requirement of § 26150 is unconstitutional. He contends that he satisfies the requirement.

C. **Good Moral Character Applied To The Facts Of This Case**

On February 26, 2013, the Sheriff's Department denied Plaintiff Birdt's application for a concealed weapon carry license on the ground that Birdt did not satisfy the good moral character requirement of Cal. Pen. Code § 26150. In making this determination, the Sheriff's Department relied on Plaintiff's suspension from the State Bar and his stipulation

---

[5]    Plaintiff asserts that the State Bar disciplinary proceeding is a civil administrative proceeding and he did not suffer any criminal conviction, but he stipulated that he committed perjury, which is a crime. The fact that he was not prosecuted and convicted does not mean that the Sheriff could not consider Plaintiff's misconduct which Plaintiff stipulated was moral turpitude in deciding to grant or deny his application for a concealed weapon license.

that he engaged in acts of moral turpitude.  The Court would have no difficulty with the above determination were this shortly after the 2005 misconduct occurred or after the 2009 suspension or even in 2011 near the expiration of his probation.  By 2013, however, Birdt was fully restored to active Bar status.  Birdt had to demonstrate good moral character to regain his Bar status.  He could not be an active, practicing member of the Bar if he had not demonstrated rehabilitation and been found to be of good moral character.

McMahon asserts that "[i]t is irrelevant that Plaintiff believes that he is now rehabilitated or that he claims he is now allowed to practice law again" but never explains why that is so.  The notion that Birdt, having once engaged in conduct constituting moral turpitude, is forever barred from obtaining a concealed weapon carry license appears to be at odds with the immigration and professional regulatory schemes earlier described.  As already noted, the United States Customs and Immigration Services generally does not consider crimes involving moral turpitude older than five years disqualifying.  Also, the State Bar of California has an extensive statement about rehabilitation after a suspension.  Some of the factors listed in that statement and in Chadwick apply here.  Plaintiff cooperated with State Bar authorities.  He had to pass an ethics exam.  His misconduct occurred in 2005 and there have been no incidents of misconduct or crimes involving moral turpitude since 2005.  He serves as a guardian ad litem for the Superior Court.  The Court finds it troubling that Birdt can be denied a license for lack of good moral character when he is no longer subject to any disciplinary regime and the State Bar regards him as being of good moral character.   McMahon does not point to any other basis or reason for denying Plaintiff's application other than his stipulation to State Bar discipline for his 2005 professional misconduct.

### D.     Sheriff McMahon's Discretion

In light of the foregoing concerns, and given that Sheriff McMahon's Motion to Dismiss for failure to state a claim must be denied, see infra, the Court recommends that the parties' motions for summary judgment be denied without prejudice to reconsideration after Sheriff McMahon has exercised his discretion to deny Plaintiff a permit on grounds

other than lack of good moral character.  Even if Plaintiff meets the good moral character requirement, this does not mean he necessarily is entitled to a concealed weapon license.  Sheriff McMahon asserts that, even if Plaintiff satisfied the threshold requirements of § 26150, he is entitled to exercise his discretion under that statute to deny Plaintiff a license.  California is a "may issue" state.  § 26150 provides that ". . . the sheriff of a county may issue a license" to a person who satisfies the other requirements of the statute.  As such, Sheriff McMahon argues he is not <u>required</u> or <u>mandated</u> to issue a license to anyone simply because he or she satisfies the other requirements of the statute.

<u>Heller</u> and <u>Peruta</u> addressed laws and policies containing blanket prohibitions on possession and carrying of firearms in the home and outside the home.  They did not address discretionary, individualized denials of permits based on facts particular to an applicant's suitability to carry a concealed weapon.  The Court agrees that there may be individualized reasons for denying an application for a concealed weapon license that would not contravene the Second Amendment right to carry a gun outside the home for self-defense recognized in <u>Peruta</u>.  Legislatures cannot conceive of every basis that would be disqualifying.  Both <u>Heller</u> and <u>Peruta</u> speak of the Second Amendment right to bear arms for "responsible" and "law-abiding" citizens.  <u>See Peruta</u>, 742 F.3d at 1150 n.2 ("In this case as in <u>Heller</u>, we consider the scope of the right only with respect to responsible, law-abiding citizens").  <u>Heller</u> also made clear that the list of reasons identified for regulating the right to bear arms is not "exhaustive".  554 U.S. at 627 n.26.  <u>Peruta</u> emphasized the appropriateness of regulatory measures.  742 F.3d at 1178.  The Court concludes based on <u>Heller</u> and <u>Peruta</u> that any reasons or facts that would demonstrate an applicant is not "responsible" and "law-abiding" would not offend or implicate the Second Amendment.  Plaintiff cites cases invalidating laws that impose prior restraints on First Amendment rights or would deny those rights through uncontrolled discretion[6], but <u>Heller</u> and <u>Peruta</u> have not extended the First Amendment prior restraint prohibition to the Second Amendment and

---

[6]    <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993); <u>Cantwell v. State of Connecticut</u>, 310 U.S. 296, 305-06 (1940); <u>Staub v. City of Baxley</u>, 355 U.S. 313, 322-23 (1958).

both have approved regulations to limit the Second Amendment right to bear arms to "responsible, law-abiding" citizens which necessarily will involve discretionary assessments. Discretionary determinations that an applicant is not a responsible, law-abiding citizen are not standardless, uncontrolled or unfettered.

In this case, however, the Sheriff's Department did not deny Plaintiff a concealed weapon carry license for some discretionary reason. Sheriff McMahon has stated that the license was denied based on lack of good moral character. His assertion, fairly construed, is that he <u>could</u> have exercised his discretion to deny Plaintiff's application for a license but did not actually do so. Sheriff McMahon apparently believes that merely because he had the discretion to deny Plaintiff's concealed weapon application and would have exercised his discretion to do so, the denial of Plaintiff's application is unreviewable. That premise is incorrect. If a sheriff of a county denied an application solely because of an African-American applicant's race, that decision plainly would be reviewable on both equal protection and Second Amendment grounds. <u>See</u> <u>Guillory v. Orange County</u>, 731 F.2d 1379, 1382-83 (9th Cir. 1984) (recognizing equal protection claim in challenge to denial of concealed weapon permit). Also, the decision to deny a license is reviewable under state law for abuse of discretion if arbitrary, capricious or entirely lacking in evidentiary support. <u>Clifford v. City of Los Angeles</u>, 88 Cal. App. 4th 801, 805 (2001); <u>Salute v. Pitchess</u>, 61 Cal. App. 3d 557, 560-61 (1976). Thus, the Court does not agree that a sheriff may deny a license for any reason or no reason at all or simply because a sheriff does not like an applicant or agree with his or her views on gun use. Sheriff McMahon is authorized by § 26150 to exercise his discretion to deny a license to someone he judges as not "responsible" and "law-abiding" in order to protect the public safety but the bases for his decision can be reviewed for constitutional violations and for abuse of discretion.

In fairness, there was no reason for the Sheriff to exercise his discretion here because Plaintiff's application was denied because of a failure to meet the threshold requirement of good moral character. Given the Court's concerns with the Sheriff Department's lack of good moral character finding, Sheriff McMahon should have the

opportunity to make a discretionary determination whether Plaintiff is a "responsible" and "law-abiding" citizen. Indeed, state law <u>requires</u> him to exercise his discretion on an individual basis on every application. <u>Salute</u>, Cal. App. 3d at 560-61. Moreover, Plaintiff's Bar suspension and stipulation that his misconduct constitutes moral turpitude are appropriate considerations in determining whether Plaintiff is a "responsible" and "law-abiding" citizen. Sheriff McMahon also can consider the fact that Plaintiff would not follow the Sheriff Department's procedures for submitting his application for a license and became "irate." On the other hand, Plaintiff is a registered firearms owner and there is no evidence that he ever engaged in any misconduct with those firearms or failed to comply with statutes and regulations governing use and possession of firearms. The Court is not deciding the issue, only identifying some possible, relevant considerations.

Indeed, the Sheriff's Department is not without fault here. It never notified Plaintiff his application was incomplete or deficient, and failed to advise him he could appeal the denial. Sheriff McMahon, then, must advise Plaintiff of anything incomplete or deficient about his application. If Plaintiff fails to rectify the defects in his application, it can be denied for that reason. When he has completed the application, Plaintiff must call Sheriff McMahon for an interview date and appear for the interview. Sheriff McMahon will have the opportunity to review Plaintiff's behavior before and since 2013. If Plaintiff's application is denied, Sheriff McMahon must explain the reasons for the decision and permit whatever appeal exists. Only then will the Court consider the parties' Motions for Summary Judgment.

Based on the above analysis, the Court recommends that Sheriff McMahon's Motion to Dismiss be DENIED. The Court also recommends that Sheriff McMahon's request for summary judgment be DENIED without prejudice to its renewal after exercising his discretion to grant or deny a license. The Court further recommends that Plaintiff's Motion for Summary Judgment and request for an order requiring Sheriff McMahon to issue a permit be DENIED without prejudice to reconsideration after Sheriff McMahon exercises his discretion to grant or deny same.

/ / /

## RECOMMENDATION

**IT, THEREFORE, IS RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; (2) denying Sheriff McMahon's Motion to Dismiss; (3) denying Sheriff McMahon's request for summary judgment without prejudice to its renewal after he has an opportunity to exercise his discretion whether to deny a license to Plaintiff on grounds other than lack of good moral character; and (4) denying Plaintiff's Motion for Summary Judgment and request for an order requiring Sheriff McMahon to issue a license without prejudice to reconsideration after Sheriff McMahon exercises his discretion to grant or deny same.

DATED: September 3, 2014                          /s/ John E. McDermott
                                                              JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE

# **PROPOSED**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JONATHAN BIRDT,                )        Case No. EDCV 13-00673-VAP (JEM)
                               )
                Plaintiff,     )
                               )        ORDER ACCEPTING FINDINGS AND
        v.                     )        RECOMMENDATIONS OF UNITED
                               )        STATES MAGISTRATE JUDGE
SAN BERNARDINO SHERIFFS        )
DEPARTMENT, et al.,            )
                               )
                Defendants.    )
_____)

        Pursuant to 28 U.S.C. § 636, the Court has reviewed the pleadings, the records on file,

and the Report and Recommendation of the United States Magistrate Judge.  The Court

accepts the findings and recommendations of the Magistrate Judge.

        **IT IS HEREBY ORDERED** that: (1) Sheriff McMahon's Motion to Dismiss is DENIED;

(2) Sheriff McMahon's request for summary judgment is DENIED without prejudice to its

renewal after he has an opportunity to exercise his discretion whether to deny a license to

Plaintiff on grounds other than lack of good moral character; and (3) Plaintiff's Motion for

Summary Judgment and request for an order requiring Sheriff McMahon to issue a license is

DENIED without prejudice to reconsideration after Sheriff McMahon exercises his discretion to

grant or deny same.

DATED: _____                    _____
                                                        VIRGINIA A. PHILLIPS
                                                 UNITED STATES DISTRICT JUDGE